UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17CV-00200-DW

QUINCY TAYLOR                                                                                    PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Quincy Taylor's ("Taylor") application for supplemental security income benefits. Taylor seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Taylor (DN 15) and the Commissioner (DN 18) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 14).

## FINDINGS OF FACT

Quincy Taylor is 46 years old and lives in an apartment in Louisville, Kentucky. (Tr. 39). Taylor was in special education classes in high school, has been in and out of custody for years, and has only held temporary jobs, each lasting no more than a month. (Tr. 40, 51). According to Taylor, he has trouble walking, standing, and sitting because of pinched nerves in his shoulder (Tr.

42) and rods in his leg that were inserted during a surgery on his ACL (Tr. 46-47). Taylor also states he has trouble being in large groups of people, cannot watch television, and has occasional issues with seeing things and hearing things. (Tr. 53-54).

Taylor applied for supplemental security income benefits ("SSI") under Title XVI, claiming he became disabled on February 12, 2015 (Tr. 196), as a result of depression, chronic depressive disorder NOS, knee problems, muscle pain, and arthritis (Tr. 215). His application was denied initially (Tr. 79) and again on reconsideration (Tr. 95). Administrative Law Judge William C. Zuber ("ALJ Zuber") conducted a hearing in Louisville, Kentucky, on October 17, 2016. (Tr. 35-36). Taylor attended the hearing with his attorney. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). The ALJ issued an unfavorable decision on November 19, 2016. (Tr. 28).

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Taylor has not engaged in substantial gainful activity since May 14, 2015, the application date. (Tr. 18). Second, Taylor has the severe impairments of "degenerative disc disease of the lumbar spine, degenerative joint disease in the right knee and right shoulder, depression, and history of polysubstance abuse in remission." (*Id.*). Third, none of Taylor's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). Fourth, Taylor has the residual functional capacity to perform "less than a full range of light work" and is limited to:

> simple, routine 1-3 step tasks that are non-fast paced or quota driven. He should be afforded the option to sit and/or stand every 30-45 minutes. He is able to occasionally climb ramps/stairs, stoop, crouch, crawl and kneel. He should avoid climbing ladders, ropes, and scaffolds. He is able to occasionally perform overhead reaching and occasional pushing and pulling with the right lower extremity. He is

> able to occasionally interact with coworkers and supervisors but should avoid contact with the general public. Any changes in the work routine should be rare and gradually introduced. He is able to sustain concentration, persistence and pace for 2-hour periods of time.

(Tr. 20). Additionally, Taylor has no past relevant work to consider. (Tr. 27). Fifth and finally, considering Taylor's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

Taylor appealed the ALJ's decision. (Tr. 11). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Taylor appealed to this Court. (DN 1).

## CONCLUSIONS OF LAW

### A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

B. Analysis

1. ALJ Zuber's Step Three Analysis

Taylor first asserts that ALJ Zuber erred in finding that he did not meet or equal any listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (DN 15, at p. 8). He believes it was error because even when he is not hearing voices, "he is easily distracted, per his medical records," but ALJ Zuber did not address this in his evaluation of the listings. (*Id.*). The Commissioner responds that Taylor has waived this argument by failing to develop it. (DN 18, at p. 4). Even if Taylor had not waived the argument, the Commissioner explains there is no indication that Taylor's distractibility causes any additional limitation beyond those recognized by ALJ Zuber in evaluating the listings. (*Id.*).

The Court agrees with the Commissioner that Taylor's argument is sparse and undeveloped. He neither identifies a specific listing under which ALJ Zuber should have considered his distractibility nor cites to specific medical records describing such distractibility. Because Taylor adverted to this issue in a "perfunctory manner, unaccompanied by some effort at developed argumentation," the Court deems this argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Yet even if Taylor had developed his argument, the outcome would remain the same. ALJ Zuber thoroughly evaluated Listings 12.02, 12.04, and 12.09, all of which deal with mental impairments. In evaluating the Paragraph B criteria for these Listings, ALJ Zuber clearly considered Taylor's distractibility in concluding that Taylor has "moderate difficulties" with regard to concentration, persistence, or pace and that he would "not be best suited for detailed or complex work tasks in a pressured setting." (Tr. 20). ALJ Zuber's findings at Step Three, accordingly, are supported by substantial evidence in the record and comply with the applicable regulations.

2. ALJ Zuber's Residual Functional Capacity Determination

Taylor next argues that ALJ Zuber committed error by failing to follow the treating physician rule from 20 C.F.R. § 404.1572 and Social Security Ruling 96-2p. (DN 15, at p. 8). Taylor believes he had a treating relationship with his doctors at Jewish Hospital, University of Louisville Hospital, Seven Counties Services, and Amin Family Practice because these physicians treated him "for the entire time of alleged disability in this case." (*Id.* at p. 9). According to Taylor, ALJ Zuber did not determine whether these treating opinions were entitled to controlling weight and instead improperly relied on the State agency consultant opinions and improperly discussed and discounted the treating physician's Global Assessment of Functioning ("GAF") scores. (*Id.* at pp. 10-11). In response, the Commissioner explains that none of Taylor's alleged treating physicians completed medical opinions for ALJ Zuber to weigh. (DN 18, at p. 5). Because there were no treating physician opinions in the record, the Commissioner feels ALJ Zuber did not commit error by adopting portions of the state agency consultant opinions or by discussing the GAF scores in the record. (*Id.* at p. 6).

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The Administrative Law Judge bases his RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The source of a medical opinion dictates the process by which the Administrative Law judge gives it weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Treating sources must be given controlling weight if their opinion is "well supported by medically accepted clinical and laboratory diagnostic techniques" and is "not inconsistent with other substantial evidence" in the claimant's case record. 20 C.F.R. §

5

404.1527(c)(2); *Gayheart*, 710 F.3d at 376. If the Administrative Law Judge determines a treating source's opinion should not receive controlling weight, he must apply factors from the regulations to determine the appropriate weight to assign the opinion, *see* 20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004), and must provide "good reasons" for the weight being assigned to the treating source opinion, 20 C.F.R. § 404.1527(c)(2); *Gayheart*, 710 F.3d at 376. But when a treating physician does not make a medical judgment about the nature and severity of the claimant's impairments, the Administrative Law Judge has no duty to give the physician's observations or treatment records controlling weight or provide good reasons for not doing so. *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007).

First, the Commissioner is correct that there were no treating physician opinions included in Taylor's record. While Taylor did treat periodically at Jewish Hospital, University of Louisville Hospital, Seven Counties Services, and Amin Family Practice, the records from these providers consist solely of treatment records and testing/imaging results. ALJ Zuber, as a result, was not required to afford controlling weight to these records, when no physician from these providers submitted an opinion featuring medical judgments as to the nature and severity of Taylor's impairments. *See Bass*, 499 F.3d at 510. Taylor's argument in this respect is meritless.

Additionally, the Court does not find error in ALJ Zuber's evaluation of the State agency consultant opinions. The regulations provide that "State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a(b)(1); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2; *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). Administrative Law Judges are not bound by State agency consultant opinions but "they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6P, at *2.

6

Here, before discussing the non-examining state agency consultant opinions, ALJ Zuber afforded partial weight to the consultative examination opinion of Dr. Carter. ALJ Zuber explained that he agreed with Dr. Carter that Taylor could sit, stand, or walk throughout an 8-hour work day but stated that recent MRI findings and Taylor's history of right anterior ligament repair lend support for a stand/sit option. (Tr. 26). ALJ Zuber also explained that these findings support restrictions beyond Dr. Carter's opinion, including difficulty in climbing ladders, ropes and scaffolds, performing more than occasional postural actions, and pushing and pulling with the right lower extremity. (*Id.*). ALJ Zuber then went on to discuss the State agency consultant opinions. As to Dr. Sadler, the State agency medical consultant, ALJ Zuber declined to "wholly accept" her opinion because she appeared to base her conclusion that Taylor "remained capable of performing a range of medium work exertion" on Dr. Carter's consultative exam and opinions, which ALJ Zuber previously afforded only partial weight. (*Id.*). ALJ Zuber stated that he "finds the evidence supportive of a greater degree of functional limitation that [sic] either Dr. Carter or Dr. Sadler have assessed."[1] (*Id.*).

Taylor specifically takes issue with ALJ Zuber's reliance "on the [S]tate agency consultants, to discount the evidence of the treating sources, even when some of [sic] conclusions by the consultants he discounted." (DN 15, at p. 10). Taylor goes on to argue that "[t]he ALJ states that he does not wholly accept the consultative examination findings of Dr. Sadler, but still uses part of those conclusions to undercut the Claimant's treating providers." (*Id.*). Taylor's arguments confuse the titles and roles of the physicians that offered opinions in his case. Dr. Carter completed

---

1 Taylor does not appear to challenge ALJ Zuber's acceptance of the State agency psychological consultants' opinions at Exs 2A and 4A as "very much consistent with the objective record, the claimant's clinical presentations and demonstrated functioning, and his self-described activities of daily living." (Tr. 26-27).

7

an in-person consultative examination of Taylor on August 15, 2015 (Tr. 319-22); whereas, Dr. Sadler, as a State agency physician, only reviewed Taylor's record before rendering her opinion on January 19, 2016 (Tr. 90-92). Dr. Sadler, accordingly, did not offer consultative examination findings as Taylor alleges. Moreover, Taylor does not identify what conclusions of Dr. Sadler and Dr. Carter "undercut" the evidence provided by his treating providers.

Taylor's argument also does not succeed because, as described above, ALJ Zuber declined to wholly accept Dr. Sadler's opinion since "the evidence as a whole" does not support that Taylor can withstand the lifting and carrying physical demands of medium work as opined by Dr. Sadler and by consultative examiner Dr. Carter. (Tr. 26). In other words, ALJ Zuber gave both Dr. Sadler's State agency opinion and Dr. Carter's consultative examination opinion only partial weight because he assessed a *more restrictive* RFC than either physician. If anything, ALJ Zuber's decision to afford partial weight to the opinions of Dr. Sadler and Dr. Carter benefitted Taylor's case and, therefore, does not constitute error. *See Mosed v. Comm'r of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016) (claimant's "argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing") (citing *Warren v. Comm'r of Soc. Sec.*, No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014) (affirming the ALJ's RFC as supported by substantial evidence, in part because the ALJ assessed a more restrictive RFC than that opined by the claimant's physicians)). The Court finds ALJ Zuber's decision to afford partial weight to the opinions of Dr. Carter and Dr. Sadler is supported by substantial evidence in the record.

Lastly, the Court is unpersuaded by Taylor's assertion that ALJ Zuber's consideration of Taylor's GAF scores as part of the RFC determination was an error of law. (DN 15, at pp. 11-12). A GAF rating is considered opinion evidence, meaning the extent to which an adjudicator can rely

on the GAF rating as a measure of impairment severity and mental functioning depends on whether the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise. *See* Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) REV (Oct. 14, 2014). Here, ALJ Zuber mentioned the two GAF scores of 34 from Seven Counties Services, where Taylor received "some outpatient counseling" since February of 2015. (Tr. 24, 26). ALJ Zuber recognized that although Taylor's GAF score of 34 is indicative of major impairment in many areas according to the DSM-IV, "this degree of functioning is both inconsistent with the claimant's demonstrated clinical presentations, assessed diagnoses, and limited treatment notable for an absence of psychiatric admission or crisis intervention." (Tr. 24). Based on AM-13066 it was appropriate for ALJ Zuber to mention Taylor's GAF scores from Seven Counties Services and to discount such scores by describing in detail how the scores were inconsistent with the other evidence in Taylor's record. The Court finds no error with respect to ALJ Zuber discussing Taylor's GAF scores and finds his RFC determination is supported by substantial evidence in this respect.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.** This is a final and appealable Order and there is no just cause for delay.

Copies:       Counsel